107 N.J. Super. 264 (1969)
258 A.2d 129
AMERICAN B.D. COMPANY, A NEW JERSEY CORPORATION, PETITIONER-RESPONDENT,
v.
HOUSE OF SEAGRAMS, INC., t/a BROWNE-VINTNERS COMPANY, RESPONDENT-APPELLANT. NATIONAL WINE & LIQUOR CO., A NEW JERSEY CORPORATION, PETITIONER-RESPONDENT,
v.
HOUSE OF SEAGRAMS, INC., t/a BROWNE-VINTNERS COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1969.
Decided October 22, 1969.
*265 Before Judges SULLIVAN, CARTON and HALPERN.
Mr. Philip Lindeman, II, argued the cause for appellant (Mr. Stephen H. Roth, on the brief; Messrs. Hellring, Lindeman & Landau, attorneys).
Mr. Joseph M. Jacobs argued the cause for respondents (Messrs. Harrison & Jacobs, attorneys).
The opinion of the court was delivered by SULLIVAN, P.J.A.D.
House of Seagrams, Inc. (Seagrams) appeals from a decision of the Division of Alcoholic Beverage Control (Division) which in effect denied it the right to "go exclusive" in the distribution of its liquor products and ordered it to sell and continue to sell to respondents-wholesalers.
Prior to June 8, 1967 Seagrams had been utilizing the services of some 25 wholesalers in the distribution of its liquor products in the State of New Jersey. On that day respondents herein, American B.D. Company (American) and National Wine & Liquor Co. (National), were notified by Seagrams that their services as distributors were being discontinued effective immediately. (At the same time Seagrams decided to discontinue the service of 23 other wholesalers.) When American and National placed purchase orders with Seagrams they were not honored. American and National thereupon filed petitions with the Division charging that Seagrams, by terminating its business dealings with them, and by refusing to accept further orders from them, was discriminating against them, contrary to the provisions of the 1966 amendment of the Alcoholic Beverage Control *266 Act (act). N.J.S.A. 33:1-93.6 et seq. Acting on the petitions and Seagrams' answers, which averred that its going exclusive was a legitimate business decision, a formal hearing was held at which voluminous testimony and exhibits were received. The hearing examiner's report found Seagrams' actions to be discriminatory and in violation of the act. After exceptions and answer to exceptions were filed and considered, the Director entered his conclusions and order, concurring in the hearer's findings and conclusions, and ordering Seagrams to sell and continue to sell its products (except Kayser and Brolio wines) to American and National.
The Director held that although the original statutory prohibition against discrimination in sales of nationally advertised brands of alcoholic beverages to wholesalers, N.J.S.A. 33:1-93.1, applied to all wholesalers, the 1966 amendment to the statute restricted its applicability to wholesalers then or thereafter authorized by importers, distillers or rectifiers to handle their products. (All parties to the appeal agree that this interpretation is correct.) The Director also held that a proper application of the amendment prohibited the termination of business dealings in nationally advertised brands with any such wholesaler who had the ability to pay. (It was stipulated that American and National had the ability to pay.)
The Director recognized that an importer, distiller or rectifier would have the right to terminate a business relationship with a wholesaler who disparaged the product, showed unfair preferment in sales effort for those of a competitor, or engaged in improper or proscribed trade practices. However, no such contention was made in the present case. In the absence of any such contention, the Director held that it would be discrimination within the meaning of the amendment for Seagrams to eliminate American and National, even though the decision to do so was the result of a business judgment that the sale of Seagrams' products would be stimulated by "going exclusive" in distributorship.
*267 We agree with the Director's interpretation of discrimination as used in the amendment. The original statutory provision relating to discrimination in sales of alcoholic liquors to wholesalers required the Commissioner (now Director) to determine whether a refusal to sell to a wholesaler was "arbitrary" or not. N.J.S.A. 33:1-93.2. In Canada Dry Ginger Ale, Inc. v. F. & A. Distrib. Co., 28 N.J. 444 (1958), decided under the original statute, it was held that a distiller's initial decision to reduce its number of wholesalers within the State did not of itself contravene the statute, and might not be arbitrary if the distiller showed that the selection of certain wholesalers to the exclusion of others was made on the basis of a standard reasonably related to the legitimate business goal sought to be achieved and not conducive to the evils which the act was designed to prevent. The standard, said the court, must be of such a tangible or objective nature as will enable the Director to determine from the proofs whether its application to the wholesalers in question is reasonable.
The 1966 amendment restricted the Director's scope of inquiry to a determination of whether or not the refusal to sell was "discriminatory." N.J.S.A. 33:1-93.7. It seems clear that the Legislature, after limiting the class of wholesalers to whom the statute was applicable, extended the prohibition of the statute so as to bar any discrimination as to wholesalers in the protected class.
The Director's interpretation gives a clear and workable formula for application and has the virtue of taking the Division of Alcoholic Beverage Control out of the difficult position of evaluating and determining what is or is not a legitimate business judgment based on tangible and objective standards with all of the problems that such a determination entails.
Even if it be held that discrimination has a meaning other than that given it by the Director, and that the holding in Canada Dry, 28 N.J., at 444, is applicable to the present statutory provision, our review of the record leads us to *268 conclude that Seagrams has failed to demonstrate that its decision to eliminate American and National was made on the basis of tangible and objective standards reasonably related to legitimate business goals and not conducive to the evils which the act seeks to prevent.
In essence, all that was shown was a subjective decision to go exclusive in an effort to increase sales. Moreover, no consideration was given to the impact on the industry as a whole and the effect it would have on the wholesalers eliminated. The Director's decision herein points out that the record "dramatically demonstrates" that the smaller wholesalers proposed to be eliminated would have their ability to survive critically impaired, and might be compelled to resort to improper business practices.
The decision and order of the Director is in all respects affirmed.